IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| IN RE: INTERSTATE BAKERIES CORP., et al., Debtor | Chapter 11<br>Bankr. Case No. 04-45814-11-jwv |
| SEAN DECKARD, <br><br>Appellant, <br><br>v. <br><br>INTERSTATE BAKERIES CORP., n/k/a HOSTESS BRANDS, INC., and J. RANDALL VANCE, <br><br>Appellees. | Case No. 10-990-CV-W-NKL<br>Bankr. Adversary No. 09-4138-jwv |

**ORDER**

Before the Court is the Bankruptcy Appeal filed by Appellant Sean Deckard. [Doc. # 1.] For the following reasons, the Court affirms the ruling of the bankruptcy court.

**I.     Background**

Appellant Deckard was employed from 2004 to 2006 by Appellee Interstate Bakeries Corporation, now known as Hostess Brands, Inc. ("Hostess").[1] At the core of this lawsuit is Deckard's claim that Hostess failed to give him the statutorily required notices concerning his health insurance coverage rights, both when he initially became a participant in the company's Welfare Benefit Plan ("Plan") and when his employment was terminated.

---

[1] To avoid confusion, the company formerly known as Interstate Bakeries Corporation will be referred to as Hostess throughout this Order.

Deckard's claims are based on the notice requirements established by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), which amended and became part of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1161-69.

### A. Factual Background

#### 1. Deckard's Employment at Hostess

Hostess hired Deckard on May 20, 2004. On December 1, 2004, Deckard became a "participant" in the Plan. The Plan is an "employee welfare benefit plan" under section 3 of ERISA. 29 U.S.C. § 1002(1). Hostess is the "sponsor" and "administrator" of the Plan, and CIGNA is the third-party claims administrator. Although Deckard also named J. Randall Vance as a Defendant, in his alleged capacity as Plan administrator, the bankruptcy court expressly found – and Deckard does not contest here – that the uncontroverted facts established that Hostess, not Vance, was the Plan administrator. [Bankr. Adversary No. 09-4138-jwv, Doc. # 57 at 6 n.11.]

Hostess's Summary Plan Description ("SPD") contains the COBRA notices Hostess was required to give Deckard under section 166(a)(1). However, Hostess has been unable to locate documents evidencing the distribution of the SPD in the plant where Deckard worked at the time of his entry into the Plan, and those employed in that area who might have knowledge of its distribution are no longer with the company. Consequently, Hostess cannot confirm whether the SPD was provided to Deckard on or near his eligibility date. Deckard alleges, and Hostess concedes for purposes of its motion for summary judgment, that

Deckard did not receive the required COBRA notice at the time he became eligible for coverage under the Plan.

Hostess also cannot confirm whether the required COBRA notice was provided to Deckard upon his termination. Hostess concedes for purposes of its motion for summary judgment that Deckard did not receive the required COBRA notice on or near his termination date.

Deckard was determined to be disabled under the Social Security Act as of September 1, 2006. Deckard's employment with Hostess terminated on or about September 11, 2006, but Hostess did not process his termination until August 20, 2008.

### 2. Deckard's Post-Termination Health Care Coverage

Deckard retained health care coverage under the Plan – at no cost to him – until August 20, 2008, when Hostess cancelled his healthcare coverage retroactive to September 11, 2006. Shortly thereafter, CIGNA began attempts to recover from Deckard's healthcare providers benefits that had been paid on Deckard's behalf since his termination date.

On February 1, 2009, Deckard became eligible for Medicare A and B health insurance coverage. On May 28, 2009, Hostess revoked the cancellation of coverage under the Plan and reinstated Deckard's healthcare coverage through his Medicare eligibility date. From August 20, 2008 to May 28, 2009 – the period that Deckard's healthcare coverage had been cancelled – CIGNA recovered $2,441.83 from Deckard's health care providers, and four

healthcare providers recovered a total of $693.38 from Deckard. When Deckard's coverage was reinstated, CIGNA refunded all of the money that it had recovered, and Deckard's health care providers refunded all but $229.97 that they had collected from him.

If Deckard had obtained healthcare coverage under the Plan during the 29-month period from his termination date to his Medicare entitlement date, the premiums would have cost him approximately $8,200.00. During that period, the Plan paid $19,335.17 in health claims on behalf of Deckard. All medical claims submitted by Deckard between his termination date and his Medicare entitlement date have been paid in full.

### 3. Deckard's Appeal to the Plan Administrator

On September 1, 2009, Deckard submitted a claim for benefits due to him and an appeal under the terms of the Plan. The Plan's "Appeal Subcommittee" considered Deckard's claim, denying it on October 15, 2009. The Subcommittee found, inter alia, that all claims submitted under the Plan had been properly paid, that the revocation of the cancellation of coverage was properly handled, and that CIGNA had certified that all such claims had been paid in accordance with the terms of the Plan.

### 4. Deckard's Damages

The bankruptcy court noted that Deckard had alleged the following damages:

1. Deckard avoided and postponed seeking medical attention that he could not afford.
2. Deckard suffered stress because he postponed medical care because of a lack of insurance coverage.
3. Deckard had to pay unsubsidized retail prices for prescription medications.
4. Deckard had to resort to less expensive, generic medications.

4

> 5. Deckard had to expend additional effort to obtain necessary medicines because his on-line pharmacy would not fill his prescriptions.
> 6. Deckard had to rely on others to obtain his medications for him.
> 7. Paying retail prices for Deckard's medications caused him stress.
> 8. Deckard suffered demands for payment by medical service providers, their collectors, and CIGNA's collectors.
> 9. Deckard's credit rating was adversely affected.
> 10. Financial demands from collectors and providers caused Deckard stress.
> 11. Deckard's providers were slow to refund money after reversal of the "claw backs" and, even then, the providers did not pay him interest on those refunds.

[Bankr. Adversary No. 09-4138-jwv, Doc. # 57 at 5-6.]

### B. Procedural Background

On April 6, 2009, Deckard filed a "Supplemental Application for Administrative Expense" in the main bankruptcy case [Case No. 04-45814, Doc. # 12063], seeking a claim against Hostess, Hostess's Senior Vice President of Finance and Treasurer, J. Randall Vance, and CIGNA. In response, on July 10, 2009, Hostess filed an objection to Deckard's Application in the main case and initiated this adversary proceeding, seeking a declaratory judgment absolving Hostess and Vance of any liability to Deckard. In its objection, Hostess requested that the bankruptcy court consolidate proceedings on Deckard's Application with the adversary proceeding. Deckard consented to the consolidation of the two proceedings.

In the adversary proceeding, Deckard filed a two-count counterclaim as well as a third-party complaint against Vance. Deckard's Count I seeks a monetary award and other relief for failure to provide COBRA notice upon a COBRA qualifying event. Count II seeks a monetary award and equitable relief for failure to provide initial COBRA notice upon

coverage. [Bankr. Adversary No. 09-4138-jwv, Doc. # 15.] Deckard's counterclaim also prayed for attorneys fees. *Id.* at 8, 9.

On October 15, 2009, United States District Court Judge Scott O. Wright denied Deckard's motion to withdraw the reference to the bankruptcy court. [Bankr. Adversary No. 09-4138-jwv, Doc. # 24.] Deckard had argued that under 28 U.S.C. § 157(d) his case should be withdrawn because resolution of the proceeding required consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce – namely, ERISA and COBRA. However, Judge Wright explained:

> Section 157(d) has been interpreted to require withdrawal ... only when resolution of the issues between the parties requires "substantial and material" consideration of non-code statutes. The Court finds that in this case, Deckard has failed to demonstrate that this proceeding will require substantial and material consideration of non-code statutes.

*Id.* at 2.

On September 23, 2010, United States Bankruptcy Judge Jerry W. Venters denied Deckard's motion for summary judgment in its entirety and granted in part Hostess's motion for summary judgment, declining only to: (1) award Hostess its costs and attorney fees, (2) declare that no qualifying event occurred or that Hostess did not violate ERISA, and (3) determine Deckard's administrative expense priority, which was unnecessary in light of the other rulings. [Bankr. Adversary No. 09-4138-jwv, Doc. # 57.

Deckard now appeals under 28 U.S.C. § 158(a) from Judge Venters's September 23 summary judgment orders, as well as Judge Wright's October 15, 2009 order denying

6

Deckard's motion to withdraw reference to the bankruptcy court. [Doc. # 1.] Section 158(a) – within the "Bankruptcy Judges" chapter of the U.S. Code – provides:

> The district courts of the United States shall have jurisdiction to hear appeals
>   (1) from final judgments, orders, and decrees;
>   . . .
>   (3) with leave of the court, from other interlocutory orders and decrees
>   . . . .

28 U.S.C. § 158(a). With respect to Judge Wright's order, in his brief Deckard argues only that "the bankruptcy court erred in failing to follow the law of the case that resolution does not require substantial or material consideration of non-bankruptcy law." [Doc. # 11 at 25.]

## II.  Discussion

### A.  Standard of Review

The parties agree that a district court generally reviews a bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005). Appellee Hostess further notes that when a decision is committed to a bankruptcy court's discretion, the standard of review is abuse of discretion. *See In re Farmland Indus., Inc.*, 397 F.3d 647, 650-51 (8th Cir. 2005). "The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *Id.* at 651 (citing *Stalnaker v. DLC, Ltd.*, 376 F.3d 819, 825 (8th Cir. 2004)).

As the Eighth Circuit explained in another COBRA notice case:

> Under 29 U.S.C. § 1132(c)(1)(A), an ERISA plan administrator "may in the court's discretion be personally liable" up to $100 per day from the date of his or her failure to comply with the [COBRA] notification requirements of 29

7

> U.S.C. § 1166(a)(4). . . . We review the decision to deny statutory damages for an abuse of discretion. . . .
> We [also] review the district court's decision to award or deny attorney fees for an abuse of discretion. . . . That being said, this court has previously emphasized the role of ERISA's remedial nature in determining whether to award fees . . . .

*Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006) (citations omitted).

Here, the bankruptcy court had discretion to determine whether to impose a COBRA penalty, as well as whether to award attorney fees. Therefore, the proper standard of review is abuse of discretion.

### B. Whether Summary Judgment was Proper

Appellant Deckard asserts that his appeal presents this Court with thirteen issues to be resolved. [Doc. # 11 at 2-3.] Taken together, those issues constitute two overarching theories as to why the bankruptcy court erred by granting summary judgment in favor of Hostess. First, Deckard argues that the bankruptcy court erred in determining that he was not entitled to statutory penalties for Hostess's failure to provide him notice – initially and at termination – of his continuing health insurance rights. Second, Deckard argues that the bankruptcy court erred in denying him attorney fees and costs. The remaining issues identified by the parties are addressed below as necessary.

#### 1. The Denial of Statutory Penalties under COBRA

COBRA requires a group health plan administrator to give plan participants notice of their health insurance coverage rights upon the commencement of a participant's coverage under the plan and upon a "qualifying event," such as the termination of the participant's

8

employment. 29 U.S.C. § 1166(a). ERISA provides for a civil penalty of up to $100 a day for the failure to give these notices. 29 U.S.C. § 1132(c)(1).

Deckard argues that the bankruptcy court erred in determining that he was not entitled to statutory penalties for Hostess's failure to provide him notice of his health insurance rights at the commencement of his coverage or at the termination of his employment. Yet the decision of whether to award Deckard statutory penalties arising from either notice failure rests within the sound discretion of the bankruptcy court

The Eighth Circuit in *Starr* explained that in exercising its discretion in deciding whether to award penalties for a COBRA notice failure, a court primarily should consider "the prejudice to the plaintiff and the nature of the plan administrator's conduct." *Starr*, 461 F.3d at 1040 (quoting *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 948 (8th Cir.1999)). There, the Eighth Circuit found that the trial court had not abused its discretion because it had found that the plan administrator did not act in bad faith, in part because the claimant's coverage was ultimately extended for four months after his scheduled termination under the plan. *Id.* The Eighth Circuit noted that while it might have reached a different conclusion under de novo review, the district court had not abused its discretion. *Id.*

Here, on cross motions for summary judgment, the bankruptcy court reasoned:

If the purpose of the COBRA notice was to apprise Deckard of his right to *purchase* health insurance coverage from his termination date to his Medicare entitlement date of February 1, 2009, then that purpose was amply satisfied by [Hostess's] provision of health coverage *free of charge* until Deckard's Medicare entitlement date. . . . . Would Deckard have been any better off if Hostess had provided Deckard notice of his COBRA rights at the time he was

9

> terminated? Based on the uncontroverted facts, the Court finds that the answer is "No."

[Bankr. Adversary No. 09-4138-jwv, Doc. # 57 at 9.] Essentially, the bankruptcy court determined that Deckard was not prejudiced because his alleged noneconomic damages could not have been greater than the $8,200.00 in premiums that he had saved during the relevant time period. Having reviewed the record, and considering the tenuous causation between the COBRA notice failures and the damages alleged, the Court cannot say that the bankruptcy court abused its discretion in determining that there was no prejudice to Deckard. The bankruptcy court's finding of Hostess's good faith was also within its sound discretion, considering Hostess's reinstatement of Deckard's coverage.

Additionally, the Court declines to find that the bankruptcy judge abused his discretion by the alleged failure "to follow the law of the case that resolution does not require substantial or material consideration of non-bankruptcy law." [Doc. # 11 at 25.] Contrary to Deckard's assertions, the bankruptcy court's application of non-bankruptcy law was not "novel." *Id.* at 26. After all, the Eighth Circuit in *Starr* stated that in exercising its discretion when deciding whether to award statutory penalties in COBRA notice cases, a court should consider the prejudice to the plaintiff and the nature of the plan administrator's conduct. The bankruptcy court simply applied the law, and this Court cannot find that there was an abuse of discretion in the absence of a clearly erroneous factual finding or the application of the wrong legal standard. Moreover, Deckard's argument that "[i]n issuing its own brand of justice, the bankruptcy court did not cite a single COBRA precedent beyond a few brief

general citations" does not persuade the Court. *Id.* On this appeal, Deckard has failed to show that the bankruptcy court applied the wrong legal standard or that he was clearly erroneous in finding any material fact.

For the reasons above, the Court finds that there was no abuse of discretion with respect to the issue of statutory penalties. Therefore, it is unnecessary to examine the issue of the statute of limitations regarding the initial COBRA notice. The bankruptcy judge expressly stated: "Even if this claim wasn't time-barred, the Court would exercise its discretion to deny his request for statutory penalties for the same reason it denies his claim for statutory penalties due to Hostess's failure to provide him a COBRA notice upon the termination of his employment." [Bankr. Adversary No. 09-4138-jwv, Doc. # 57 at 7 n.18.]

### 2. The Denial of Attorney Fees

Having ruled that Deckard was not entitled to statutory penalties, the bankruptcy court then concluded:

> As a practical matter, the Court's ruling here resolves all of the issues in Deckard's Counterclaim as well, inasmuch as the only issue not addressed in Deckard's cross-motion for summary judgment is his request for fees and costs. There is no basis to award fees and costs when Deckard's substantive claims have been denied.

[Bankr. Adversary No. 09-4138-jwv, Doc. # 57 at 11 n.26.]

The relevant ERISA text provides: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

11

In *Starr*, where the Eighth Circuit affirmed the denial of statutory penalties for the COBRA notice failure, the Eighth Circuit nonetheless found that the district court had abused its discretion by refusing plaintiff attorneys fees. *Starr* emphasized the five factors that courts consider in exercising their discretion with respect to ERISA attorneys fees:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Starr*, 461 F.3d at 1041 (citing *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 969 (8th Cir. 2002) (en banc)). In determining whether to allow reasonable attorney fees and costs in an ERISA action, the court should "apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995). In *Starr*, the Eighth Circuit held, "given the remedial nature of ERISA legislation, and the need for ERISA litigants to have effective access to the courts to vindicate their rights, . . . the district court abused its discretion in denying Starr's request for attorney fees." *Id.*

However, in *Hardt v. Reliance Standard Life Ins. Co.*, the U.S. Supreme Court held that while an ERISA claimant need not be a prevailing party to recover fees, he must at least show some degree of success on the merits. 130 S. Ct. 2149, 2158 (2010). Justice Thomas explained that a claimant

> does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

*Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)). The Supreme Court did not foreclose the possibility that, once an ERISA claimant has shown some success on the merits, a court may consider the five factors described above in deciding whether to award fees. *Id.* at n.8. However, Justice Thomas emphasized that the statutory language "unambiguously allows a court to award attorney's fees in its discretion" in a manner "vesting judges with such broad discretion . . . ." *Id.* at 2158 (internal quotation omitted).

Here, subsequent to the *Hardt* decision, the bankruptcy court judge determined that there was no basis to award fees and costs when Deckard's substantive claims had been denied. Having determined that Deckard had not attained any substantial success on the merits – in fact, finding his claims "ludicrous," since Deckard received benefits at no cost – the bankruptcy judge declined to assess the five factors enumerated in *Starr*. [Bankr. Adversary No. 09-4138-jwv, Doc. # 57 at 9.] Given the holding in *Hardt*, the Court declines to find an abuse of discretion.

## III. Conclusion

Accordingly, it is hereby ORDERED that the bankruptcy court's order is AFFIRMED.

                                              s/ Nanette K. Laughrey
                                              NANETTE K. LAUGHREY
                                              United States District Judge

Dated: February 14, 2011
Jefferson City, Missouri